IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| IN RE: | * | |
| **Lisa Marie Stanley** | * | Case No. 25-14900-DER |
| Debtor | * | Chapter 13 |
| * * * * * * * * * * * * * * | | |
| **NICHOLAS V. CAGLIUSO SR., PHD, MPH** and **JEANNINE CAGLIUSO** | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Adv. Proc. No. _____ |
| **LISA MARIE STANLEY** | * | |
| Defendant | * | |
| * * * * * * * * * * * * * * | | |

### COMPLAINT OBJECTING TO DISCHARGE OF DEBTS

Pursuant to 11 U.S.C. § 523, and the general jurisdiction of this Court, Plaintiffs Nicholas V. Cagliuso Sr., PhD, MPH and Jeannine Cagliuso (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby file the instant Complaint objecting to the discharge of debts of Debtor/Defendant Lisa Marie Stanley ("Defendant"), and state the following in support thereof:

### INTRODUCTION

1. Defendant's bankruptcy is an intentional effort to thwart debts that were obtained by fraud and that caused willful and malicious injury to Plaintiffs, and others.

2. Defendant "owned and operated an interior design business, LS Interiors, LLC [("LS Interiors")], that offers interior design services to clients in Virginia and Maryland." *See* true and accurate copy of the Statement of Facts signed by Defendant Lisa Stanley in her ongoing, related criminal action in the United States District Court for the Eastern District of Viginia (Case

No. 1:25-CR-225; the "Criminal Action") attached and incorporated herein as <u>Exhibit 1</u>, at ¶ 4. Using this business, Defendant engaged in a fraudulent scheme by knowingly and unlawfully accepting large advance payments for promised services, which she then used for her own personal financial benefit without ever providing the promised services to her clients.

3. Specifically, as found and admitted to in the Criminal Action pending against Defendant, "From at least in or around July 2022 to at least October 2024, the [D]efendant did knowingly and unlawfully devise and intend to devise a scheme and artifice to defraud her clients and for obtaining money from her clients by means of false or fraudulent representations or promises. Specifically, from around 2022 through around January 2024, [Defendant] agreed to provide design services and items to approximately six individuals and two companies … but failed to provide a majority of the items and services paid for by the clients. The clients transferred money as advanced payments to purchase [Defendant's] services and the agreed upon items. Although [Defendant] previously performed some work on behalf of the clients, she failed to provide the items or services promised to the clients in exchange for the advanced payments. Instead, [Defendant] used the monies from the advanced payments to finance her gambling addiction and financially benefit herself." *Id.* at ¶ 7. Specifically, she "used the illegal proceeds she generated from the fraud scheme to make payments towards her gambling debts, credit card expenses, and other personal expenses." *Id.* at ¶ 17.

4. Plaintiffs were collectively one of the clients defrauded by Defendants. *See* true and accurate copy of Defendant's Motion to Stay Proceedings and/or for a Protective Order filed in the Circuit Court for Howard County (Case No. C-13-CV-24-000781; the "Circuit Court Action") attached and incorporated herein as <u>Exhibit 2</u> (admitting that Plaintiffs are some of the clients referred to in the related Criminal Action).

5. Accordingly, through this action, Plaintiffs seek to obtain an exception to the discharge of debts owed to them pursuant to 11 U.S.C. § 523(a)(2)(A).[1]

**PARTIES, JURISDICTION, & VENUE**

6. Plaintiffs are individual residents of New York, and, pursuant to Title 11 of the United States Code, are Creditors in the above-captioned Chapter 13 bankruptcy action. Plaintiffs previously resided in Howard County, Maryland when contracting with Defendant.

7. Defendant is an individual resident of Howard County, Maryland, and pursuant to Title 11 of the United States Code, is the Debtor in the above-captioned bankruptcy action. Upon information and belief, Defendant has prior criminal convictions in the State of Pennsylvania from 2011 relating to (1) deceptive business practices, (2) receiving advance payments and failing to perform, and (3) theft by deceptive and/or false impressions – all of which, as is detailed herein, is similar, unlawful conduct that Defendant has continued to pursue, now here in Maryland, against Plaintiffs, and others.

8. At all times relevant to this Complaint, Defendant was the sole owner and operator of LS Interiors. Defendant further exclusively controlled the direction and strategy of LS Interiors, including controlling the contracts entered into on behalf of LS Interiors, the retention of payments made to LS Interiors, and the work and/or services (if any) completed by LS Interiors.

9. At all times relevant to this Complaint, LS Interiors was in the business of providing interior design services. However, since October 1, 2024, LS Interiors has been a defunct and/or forfeited entity in the State of Maryland. Upon information and belief, LS Interiors was

---

[1] Additionally, while Defendant has yet to be sentenced for her crimes, the plea agreement that was entered on August 12, 2025 in the Criminal Action, specifically states that her sentence may include the payment of restitution under title 18 of the United States Code. *See* true and accurate copy of the Plea Agreement attached and incorporated herein as Exhibit 3, at ¶ 7. With Defendant's sentencing scheduled for December 4, 2025, the debts owed to Plaintiffs may soon be also nondischargeable under 11 U.S.C. § 1328(a)(3).

undercapitalized and over-leveraged, and Defendant therefore intentionally used LS Interiors as her alter ego. She has owned and controlled LS Interiors in its entirety and engaged in frauds (as detailed herein) behind the corporate shield of LS Interiors. To this end, it would be unfair, unjust, and inequitable for Defendant to receive a discharge for the debts discussed herein – debts which she personally obtained through fraud and malicious conduct against Plaintiffs.

10. This Court has jurisdiction over the above-captioned Chapter 13 case pursuant to 28 U.S.C. § 157(a) and § 1334(b). Venue of this Chapter 13 action is proper in this Court pursuant to 28 U.S.C. § 1408(1).

11. This is a core proceeding. This Court has jurisdiction to enter a final order on this Complaint pursuant to 28 U.S.C. § 157(b)(2)(I).

12. This Complaint is timely. Defendant's Voluntary Petition was initially filed on May 30, 2025. ECF No. 1. Defendant's initial meeting of the creditors was scheduled for July 10, 2025, thereby meaning that any objections to the discharge of certain debts in this case must be filed on or before September 8, 2025. *See* ECF No. 4 (noting the September 8, 2025 deadline for challenging a debt as excepted from discharge under 11 U.S.C. § 523(a)(2) or (4)).

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

13. In late 2023, Plaintiffs communicated with LS Interiors, and specifically communicated with Defendant, about providing and installing window treatments at their then-personal residence, located at 15613 Linden Grove Lane, Woodbine, Maryland 21797 (the "Property").

14. On January 10, 2024, Plaintiffs met with a representative of LS Interiors, Jeehan Kashim ("Ms. Kashim"), at their Property to discuss the window treatments they were hoping to

have provided and installed for their dining room, office, family room, kitchen, and five (5) bedrooms.

15. Over the next few weeks, Plaintiffs met with Defendant to further discuss their custom window treatment selections, and, ultimately, on February 20, 2024, Defendant emailed Plaintiffs a proposal that represented the final window treatment selections, as well as the total cost of $52,495.71 (the "Proposal"). *See* true and accurate copy of the Proposal attached and incorporated herein as Exhibit 4. Further, this Proposal explicitly mentioned that delivery is expected to take "6-12+ weeks." *See id.* at p. 15.

16. On February 20, 2024, pursuant to the Proposal, Plaintiffs promptly paid Defendant the entirety of the Proposal price, *i.e.*, $52,495.71, as well as an additional $629.95 transaction fee. Defendant accepted this $53,125.66 and provided Plaintiffs a receipt detailing and confirming such payment. *See* true and accurate copy of the Receipt attached and incorporated herein as Exhibit 5.

17. On March 20, 2024, Defendant sent Drapery Contractors to Plaintiffs' Property to measure for the installation of the window treatments.

18. In early May 2024, Plaintiffs inquired as to when their window treatments would be installed. In response, Plaintiffs learned that Ms. Kashim no longer worked for Defendant. However, Defendant on May 8, 2024 personally assured Plaintiffs that "[m]ost all of the material has been shipped/delivered to the workroom, we are waiting on the hardware" and that she "may have them install in pieces to keep it moving."

19. After not hearing anything further about the installation of their window treatments, on May 21, 2024, Plaintiffs again inquired as to the status of the window treatments and explicitly expressed their approval that Defendant install immediately any window treatments that were ready to be installed.

20. After receiving no response from Defendant, Plaintiffs attempted to text and call, but Defendant failed to respond. And Plaintiffs were unable to leave a voicemail message as Defendant's voicemail was full. With no alternatives, Plaintiffs continued emailing Defendant asking when their window treatments, which were already paid for in full, would be installed.

21. Finally, in response, Defendant sent Plaintiffs an email on June 12, 2024 (nearly four months after the Proposal) that read: "I am beyond sorry! My lack of communication is awful, and you guys deserve better. I am literally working alone at this juncture and my hair is on fire. . . . I have a call into the window treatment workroom to find out what materials have been delivered and which rooms are made/ready to install. I do know hardware is still lagging but I will continue to stay on top of it. Again, I am so very sorry. I have no excuse for treating both of you this badly. I adore you guys and only want to be sure you have a happy ending to a miserable experience. I've fallen short of this and will do better. Please don't hate me."

22. Despite this promise to quickly remedy her failures, Defendant continued to not deliver the window treatments and continued to ignore further communications from Plaintiffs inquiring as to the status of their purchased window treatments.

23. As of the date of filing, Plaintiffs have not received any window treatments (much less the custom made and extensive window treatments they diligently picked out and paid for), have not received a return of their $53,125.66 payment, and have continued to be blatantly ignored by Defendant.

24. To make matters worse, Plaintiffs have since learned that taking payment in full and providing no goods or services in return is a regular practice of Defendant as she has prior criminal convictions related to such behavior, is currently involved in a criminal proceeding related to such behavior, and is currently involved in other civil litigation related to such behavior. In

short, Defendant defrauded Plaintiffs into paying more than $50,000 without ever having any intent to perform her end of the bargain and provide and install custom window treatments for Plaintiffs at their Property.

25. Accordingly, on September 23, 2024, Plaintiffs filed a civil complaint against Defendant and LS Interiors in the Circuit Court Action, alleging, *inter alia*, that Defendant committed common law fraud and violated the Maryland Consumer Protection Act by repeatedly, falsely representing to Plaintiffs that she would provide and install certain, selected window treatments at the Property. *See* true and accurate copy of the civil complaint from the Circuit Court Action, attached and incorporated herein as Exhibit 6.

26. On May 30, 2025, Defendant filed a petition for Chapter 13 bankruptcy listing Plaintiffs as unsecured creditors. Through her petition and related filings, Defendant identified that she owed $50,000 of unsecured debt to Plaintiffs. *See* Defendant's Summary of Assets and Liabilities and Certain Statistical Information, ECF No. 17, at p. 39, 44 of Schedule E/F.

27. On that same day, Defendant filed a Notice of Bankruptcy Filing in the Circuit Court Action notifying the Court that the ongoing civil case must be stayed during Defendant's bankruptcy proceedings.

## COUNT I - DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523(a)(2)(A)

28. Plaintiffs incorporate and adopt by reference all of the preceding facts and allegations as if set forth in full herein.

29. Pursuant to 11 U.S.C. § 523(a)(2)(A), a debtor is not entitled to a discharge to the extent the debt was obtained by "false pretenses, a false representation, or actual fraud[.]"

30. Defendant repeatedly represented to Plaintiffs that she would provide and install certain, selected window treatments at the Property. These promises were made originally via the

Proposal, and then later reinforced in person, over the phone, through text messages, and through emails. These statements were false as Defendant never provided or installed window treatments for Plaintiffs, even though Defendant accepted and retains Plaintiffs' $53,125.66 payment for such promised window treatments.

31. Defendant's above-referenced representations were made knowingly and willfully, with evil intent and actual malice, and with the specific intent of inducing Plaintiffs to pay for such goods and services and generally defrauding and deceiving Plaintiffs. Specifically, and as appears is Defendant's pattern and practice, Defendant made such representations to receive the large, upfront payment from Plaintiffs and then deceive Plaintiffs into not reversing, voiding, or otherwise rescinding such large payment. These representations were made without any intent of ever installing or providing window treatments to Plaintiffs.

32. In fact, Defendant admitted that she engaged in this malicious fraudulent scheme, that she did so knowingly, and she did so to finance her "gambling addiction and financially benefit herself." *See* Ex. 1 at ¶ 7 and 16-17. Defendant engaged in this scheme with knowledge that injury to Plaintiffs was substantially certain to occur.

33. Plaintiffs relied on the misrepresentations made by Defendant, with a right to rely on such statements, and did not rescind their substantial payment, waited patiently for such window treatments, and wasted their time repeatedly attempting to communicate with Defendant regarding their window treatments.

34. These misrepresentations made by Defendant also violated the Maryland Consumer Protection Act. First, Defendant advertised and offered to provide Plaintiffs with window treatments "[w]ithout intent to sell, lease, or rent them as advertised or offered." *See* MD. CODE ANN., COM. LAW § 13-301(5). Second, Defendants repeated, false representations to deliver on the

promised window treatments had "the capacity, tendency, or effect of deceiving or misleading consumers." *See* MD. CODE ANN., COM. LAW § 13-301(1). Third, Defendants represented that "consumer goods, consumer realty, or consumer services ha[d] a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they [did] not have" when Defendant repeatedly assured Plaintiffs that much of their materials had been delivered and were ready to install. *See* MD. CODE ANN., COM. LAW § 13-301(2)(i).

35. Plaintiffs are "Consumers" under Maryland's Consumer Protection Act ("CPA"), MD. CODE ANN., COM. LAW § 13-101(c), because they are actual purchasers of consumer goods and services.

36. Defendant engages in both consumer sales and consumer services under CPA § 13-101(i) and (j) as she engages in the "[s]ale of or offer or attempt to sell merchandise" and provides a service related to "[b]uilding repair or improvement service."

37. Pursuant to CPA § 13-408(b), Plaintiffs are entitled to recover their attorneys' fees and costs in this action on account of Defendant's unfair and deceptive trade practices detailed *supra*.

38. As a direct and proximate result of Defendant's knowing, malicious, deliberate, and intentional misrepresentations that constitute common law fraud and violations of the Maryland Consumer Protection Act, Plaintiffs suffered damages.

39. Accordingly, Defendant's debt owed to Plaintiffs, which equates to $53,125.66 plus interest, is nondischargeable as the debt was obtained through fraud.

40. Pursuant to 11 U.S.C. § 523(c)(1), Plaintiffs have standing as creditors in this case to object to the dischargeability of their debts with Defendant.

WHEREFORE, Plaintiffs Nicholas V. Cagliuso Sr., PhD, MPH and Jeannine Cagliuso respectfully request that the Court enter an order that:

(a) Finds that the debt owed to Plaintiffs is excepted from the general discharge of 11 U.S.C. § 1328, pursuant to 11 U.S.C. §§ 523(a)(2)(A), because the debt was obtained through fraud committed by the Debtor/Defendant Lisa Marie Stanley;

(b) Enter judgment against Defendant in the principal amount of $53,125.66, plus punitive damages in the amount of $100,000.00, plus reasonable attorneys' fees and costs incurred in connection with this action pursuant to the Maryland Consumer Protection Act, plus pre- and post-judgment interest; and

(c) Grants such other and further relief as may be just.

Respectfully submitted,

/s/ Charles E. Remus II
Charles E. Remus II, Esq. (Bar No. 11691)
Bridget A. Nolen, Esq. (Bar No. 31088)
Remus, Weddle & Cavenee, LLC
18 West Church Street, 2nd Floor
Frederick, Maryland 21701
301-206-5770 (office)
301-206-5771 (fax)
cremus@rwclawyers.com
*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 3rd day of September, 2025, a copy of the foregoing Adversary Complaint was served, via electronic filing, upon the following:

Richard J. Hackerman, Esq.
3635 Old Court Road, Suite 208
Baltimore, MD 21208
410-243-8800 (office)
410-630-7232 (fax)
richard@richardhackerman.com
*Counsel for Defendant*

                                                  /s/ Charles E. Remus II
                                                  Charles E. Remus II, Esq. (Bar No. 11691)