IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
IN OPEN COURT
AUG 12 2025
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES OF AMERICA

v.

LISA STANLEY,

*Also known as Lisa Gorczynski*

Defendant.

Case No. 1:25-CR-225

## STATEMENT OF FACTS

1. The United States and the defendant, LISA STANLEY (hereinafter, "defendant" or "Stanley"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

2. Stanley resided in Maryland from 2022 through October 2024.

3. Stanley was also known as Lisa Gorczynski.

4. At all relevant times, Stanley owned and operated an interior design business, LS Interiors, LLC, that offered interior design services to clients in Virginia and Maryland. LS Interiors, LLC's clients included both individuals and businesses.

5. Victim 1 was a Country Club located in Arlington, Virginia, within the Eastern District of Virginia. Victim 1 was one of Stanley's clients.

6. During 2023, Victim 2 resided in Ashburn, Virginia, also within the Eastern District of Virginia. Victim 2 was an individual and one of Stanley's clients.

### MAIL FRAUD SCHEME

7. From at least in or around July 2021 to at least October 2024, the defendant did knowingly and unlawfully devise and intend to devise a scheme and artifice to defraud her clients

1

Exhibit 1

and for obtaining money from her clients by means of false or fraudulent representations or promises. Specifically, from around 2022 through around January 2024, Stanley agreed to provide design services and items to approximately six individuals and two companies (collectively, the clients) but failed to provide a majority of the items and services paid for by the clients. The clients transferred money as advanced payments to purchase Stanley's services and the agreed upon items. Although Stanley previously performed some work on behalf of the clients, she failed to provide the items or services promised to the clients in exchange for the advanced payments. Instead, Stanley used the monies from the advanced payments to finance her gambling addiction and financially benefit herself.

8. For example, Victim 1 hired Stanley and her business, LS Interiors LLC, to provide design services, custom furniture and custom lighting for Victim 1's Club Grille in 2022. Victim 1 prepaid Stanley for over $500000 worth of design services and customized items. While Stanley did provide the design services that Victim 1 paid for, she did not provide many pieces of customized furniture. Specifically, in November 2023, Stanley invoiced Victim 1 for design services and customized furniture that she valued at approximately $354,000. However, this invoice also included a credit worth approximately $189,000 which meant the invoice called for a payment of approximately $220,000.

9. Victim 1 sent another payment to Stanley that same month via ACH for approximately $220,000 in response to the invoice in November 2023. However, Stanley never provided the customized furniture that was referenced in her invoice.

10. Victim 1 inquired about the delivery of the customized furniture multiple times. Stanley sent Victim 1 several lulling communications in response to Victim 1's questions about the delivery of the customized furniture. Stanley repeatedly emailed Victim 1 that she had ordered

the furniture but was waiting on the vendor to deliver the customized pieces. Stanley knew that these explanations were in fact false when she wrote the emails, because she never paid the vendor for the customized pieces even though Victim 1 had previously paid her for the furniture.

### The Mailing

11. Around December 2021, Victim 2 contracted with a homebuilder to build a home in Potomac, Maryland. The homebuilder had a preexisting agreement with Stanley, where her company, LS Interiors, LLC, would provide the interior design work for the new homes built by the homebuilder. Thus, Stanley's company, LS Interiors, LLC, was supposed to provide the interior design work for Victim 2's new home.

12. Victim 2 first paid Stanley directly for lights and mirrors for his new home. Most of the lights and mirrors were delivered by LS Interiors, LLC but some were not delivered.

13. Around July 1, 2023, Stanley invoiced Victim 2 for another $170,455.81. This invoice was for her design fee of $16,200.00 and for additional furniture and décor that Stanley was supposed to provide for Victim 2's new home. After receiving the invoice, Victim 2 paid for the furniture and décor by check. Victim 2 mailed this check from Ashburn, Virginia via a blue U.S. Postal mailbox on or around July 6, 2023. This check was made payable to LS Interiors, LLC for $170,455.81 and dated July 6, 2023. Stanley deposited the check into a bank account under her control on July 11, 2023. However, Stanley never delivered any of the invoiced furniture or décor to Victim 2.

14. The invoiced furniture and décor were initially supposed to be delivered to Victim 2 around February 2024, but they were not delivered at this time. Around June 2024, Victim 2 asked Stanley for an update on the furniture and décor, and Stanley indicated that they would be delivered around September 2024. Through the end of summer and fall of 2024, Victim 2 sent

3

multiple emails and physical letters (some via registered mail) to Stanley, that she did not answer. Victim 2 never received the furniture or décor from Stanley.

15. Stanley engaged in the same pattern of behavior with other clients, wherein the clients would send advance payments to Stanley for design services or custom items. However, Stanley failed to provide a substantial portion of the items or services. Stanley also caused losses to two vendors who she did not pay for work that she subcontracted out on behalf of her clients. Stanley caused over $665,000 in actual loss to her clients and the two vendors, as detailed in the table below.

| Fraud Scheme | Actual Loss |
| --- | --- |
| Victim 1 | At least $329,086 |
| Victim 2 | At least $170,455 |
| Victim 3 | At least $51,583 |
| Victim 4 | At least $31,041 |
| Victim 5 | At least $16,600 |
| Victim 6 | At least $ $18,500 |
| Victim 7 | At least $9,500 |
| Victim 8 | At least $5,400 |
| Victim 9 | At least $50,000 |
| **Total:** | **At least $665,565** |

16. Instead, of providing the agreed upon items and services, Stanley used the clients' funds to finance her gambling addiction and financially benefit herself

17. Stanley ultimately used the illegal proceeds she generated from the fraud scheme to make payments towards her gambling debts, credit card expenses, and other personal expenses.

18. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

19. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Erik S. Siebert
United States Attorney

Date: 8/12/25    By: _____
Kathleen E. Robeson
Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, LISA STANLEY, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
LISA STANLEY

I am Lisa Stanley's defense attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Nina Ginsberg, Esq.
Attorney for LISA STANLEY